**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES<br><br>v.<br><br>PHIL DARKWAH, *et al.*,<br><br>*Defendants*. |

Criminal Action No. 25 - 194 (LLA)

**MEMORANDUM OPINION AND ORDER**

Defendants Phil Darkwah and Ablie Kujabi were charged by indictment with one count each of unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. Mr. Kujabi has moved to dismiss Count Two, arguing that the statute is unconstitutional—both on its face and as applied to him—under *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). ECF No. 23, at 1. Mr. Darkwah initially joined in that motion, ECF No. 24, but has since pleaded guilty, Nov. 14, 2025 Minute Entry. Mr. Kujabi's motion is fully briefed. ECF Nos. 23, 27, 31. For the following reasons, the court will deny the motion.

**I.  FACTUAL BACKGROUND**

On May 6, 2025, three officers of the D.C. Metropolitan Police Department ("MPD") were conducting mobile traffic enforcement near the 100 block of I Street, SE.[1] The officers observed

---

[1] Unless otherwise noted, the court draws the facts from Officer Mohd Hossain's body-worn camera, which the United States has provided in discovery, and the *Gerstein* affidavit filed in the criminal case against Mr. Kujabi in the Superior Court of the District of Columbia arising out of

(*continued on next page*)

a black vehicle without the required Virginia license plate affixed to the front bumper and activated their lights and sirens to conduct a traffic stop. Mr. Kujabi, the driver of the black sedan, complied with the traffic stop by pulling over his vehicle. After stopping, Mr. Kujabi stayed inside his car, but Mr. Darkwah, who was in the front passenger seat, immediately exited. Despite the officers' commands for Mr. Darkwah to top, he continued to flee. An officer observed Mr. Darkwah clutching an item in his waistband and believed that he was concealing a weapon. The two officers chasing Mr. Darkwah eventually apprehended him in the entryway of a nearby apartment building.

Officer Mohd Hossain remained near Mr. Kujabi's vehicle after Mr. Darkwah fled. Officer Hossain opened Mr. Kujabi's door, pulled Mr. Kujabi out of his vehicle, and placed him in handcuffs. After other MPD officers arrived as backup, Officer Hossain ran Mr. Kujabi's information through law enforcement databases to complete the traffic stop. The officers who apprehended Mr. Darkwah subsequently brought him back to where Mr. Kujabi's car was stopped.

While Officer Hossain was investigating Mr. Kujabi for traffic-stop-related purposes, an individual informed another officer that he had found a firearm in landscaping outside the apartment building where Mr. Darkwah was apprehended. Once officers located the firearm, they informed Mr. Darkwah that he was being placed under arrest for carrying a pistol without a license, possession of an unregistered firearm, and possession of unregistered ammunition.

Officer Hossain then conducted a search of Mr. Kujabi's vehicle incident to Mr. Darkwah's arrest. During his search, he found suspected marijuana, THC edibles, and a firearm underneath the driver's seat where Mr. Kujabi had been sitting. An officer then placed Mr. Kujabi under arrest for unlawful firearm and cannabis possession, and he was charged the next

---

the same incident. *See United States v. Kujabi*, No. 2025-CF2-5122 (D.C. Super. Ct.). The government dismissed the Superior Court charges shortly after a federal grand jury indicted Mr. Kujabi. *See id.*

day in the Superior Court of the District of Columbia with unlawful possession of a firearm after a prior conviction exceeding one year, in violation of D.C. Code § 22-4503(a)(1), and carrying a pistol without a license, in violation of D.C. Code § 22-4504(a)(1).  *United States v. Kujabi*, No. 2025-CF2-5122 (D.C. Super. Ct.).

In July 2025, a federal grand jury returned a two-count indictment charging Mr. Kujabi and Mr. Darkwah each with one count of unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 1.  Mr. Kujabi has one prior felony conviction from a case in Prince George's County, Maryland, for possession with intent to distribute marijuana.[2]  *Id.* at 2; *see* ECF No. 23, at 4 n.2; ECF No. 23-1, at 1.

In October 2025, Mr. Kujabi filed a motion to suppress physical evidence and statements, ECF No. 22,[3] and a motion to dismiss the indictment under the Second Amendment, ECF No. 23.

---

[2] The court takes judicial notice of the docket from Mr. Kujabi's prior case in Maryland.  *See* Fed. R. Evid. 201(b)(2); ECF No. 23, at 4 n.2 (explaining that Mr. Kujabi's conviction arises from Case No. CT220389X, which is the same case as the one listed in the indictment here, Case No. 2300731922); *see also* ECF No. 1, at 2.  Mr. Kujabi was arrested in March 2022 for violating Maryland Code § 5-602, which prohibits possession of a controlled substance with the intent to distribute it.  *See State v. Kujabi*, No. CT220389X (Prince George's Cnty. Cir. Ct.).  That offense was a felony at the time Mr. Kujabi was arrested, but a misdemeanor under Maryland law when he was convicted in May 2024.  *See* ECF No. 23-1, at 1; Md. Code Ann., Criminal Law §§ 5-602(b)(1), 5-607(a)(2) (reflecting that possession with intent to distribute marijuana is a now a misdemeanor); 2022 Md. Legis. Serv. 26 (West) (lowering the penalty for marijuana possession under Maryland Code § 5-602(b)(1) to a misdemeanor).  Mr. Kujabi's misdemeanor conviction in Maryland is nonetheless considered a felony conviction for purposes of 18 U.S.C. § 922(g)(1)— his charge in this case—because it was punishable by up to three years of imprisonment.  Md. Code Ann., Criminal Law § 5-607(a)(2); 18 U.S.C. § 921(a)(20)(B) (noting that the term "crime punishable by imprisonment for a term exceeding one year" for Section 922(g) purposes does not include "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less").

[3] After briefing and an evidentiary hearing, the court granted in part and denied in part Mr. Kujabi's motion to suppress.  ECF No. 39.

Mr. Darkwah filed a motion to join in Mr. Kujabi's dispositive motions, ECF No. 24, but subsequently entered a plea of guilty, Nov. 14, 2025 Minute Entry.[4] Mr. Kujabi's motion to dismiss is fully briefed. ECF Nos. 23, 27, 31.

## II.   DISCUSSION

The Second Amendment recognizes "an individual right to keep and bear arms for self-defense." *Bruen*, 597 U.S. at 17. "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 21 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). In *Bruen*, the Supreme Court clarified the scope of conduct that may be regulated consistent with the Second Amendment, explaining that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. A regulation passes constitutional muster, however, if the government demonstrates that the regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

*Bruen* put an end to a two-step framework that federal courts had applied in the years following *Heller* and *McDonald v. Chicago*, 561 U.S. 742 (2010). Under that framework, if historical evidence established that the challenged law regulated conduct outside the original scope of the Second Amendment right, courts held that the conduct was not protected. *Bruen*, 597 U.S. at 18. But if the historical evidence was unclear or suggested that the conduct was not categorically unprotected, the courts would weigh a law's burden against the benefit it offered. *Id.* at 18-19. The *Bruen* Court rejected this framework as "one step too many." *Id.* at 19. The Court clarified that *Heller* and *McDonald*'s methodology centered on constitutional text and history and "did not invoke any means-end test such as strict or intermediate scrutiny" or any "'interest-balancing

---

[4] Because Mr. Darkwah has pleaded guilty, Nov. 14, 2025 Minute Entry, the court will deny his motion to join in Mr. Kujabi's pre-trial motions as moot.

inquiry.'" *Id.* at 22 (quoting *Heller*, 554 U.S. at 634). Thus, the Court explained, "[t]he test that we set forth in *Heller* and apply today requires courts to assess [only] whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26.

Mr. Kujabi first argues that Section 922(g)(1), which imposes a lifelong ban on felons possessing firearms and ammunition, is facially unconstitutional under *Bruen* because felons fall within "the people" protected by the Second Amendment and the government cannot show a historical tradition of felon disarmament in the founding era. ECF No. 23, at 6-24. Mr. Kujabi also points to several decisions from other courts accepting similar arguments after *Bruen*. *Id.* at 31.

But as courts in this district have consistently held since *Bruen*,[5] Mr. Kujabi's arguments are foreclosed by D.C. Circuit precedent. In *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019), a pre-*Bruen* case, examination of the Nation's historical tradition of firearms regulation led the Court to reject the argument that previously convicted felons have a right to bear arms. *Id.* at 158-60. The Court "look[ed] to the public understanding of the right at [the time the Second Amendment was ratified] to determine if a convicted felon would fall outside the scope of its protection." *Id.* at 158. After determining that capital punishment for felonies was "'ubiquit[ous]'" and the "'standard penalty for all serious crimes,'" the Court reasoned that it was

---

[5] *See United States v. Speaks*, No. 25-CR-217, 2025 WL 3701958, at *2-4 (D.D.C. Dec. 19, 2025); *United States v. Williams*, No. 25-CR-112, 2025 WL 2634467, at *2-3 (D.D.C. Sep. 12, 2025); Order at 8 n.2, *United States v. Sargent*, No. 24-CR-447 (D.D.C. May 21, 2025) (collecting cases); *see also United States v. Turman*, No. 23-CR-171, 2024 WL 6111873, at *1-8 (D.D.C. Dec. 2, 2024); *United States v. Powell*, No. 22-CR-293, 2024 WL 4502226, at *3 (D.D.C. Oct. 16, 2024); *United States v. Lewis*, No. 24-CR-144, 2024 WL 3581347, at *2 (D.D.C. July 29, 2024); *United States v. Richardson*, No. 23-CR-200-1, 2024 WL 402948, at *3, n.2 (D.D.C. Feb. 2, 2024); *Baisden v. Garland*, No. 19-CV-3105, 2023 WL 7695744, at *5 (D.D.C. Nov. 15, 2023).

"difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Id.* at 158 (alteration in original) (quoting *Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring in judgment)).

Mr. Kujabi contends that *Medina* has been overruled or abrogated by *Bruen*. ECF No. 23, at 4, 25-32. Not so. While *Medina* set forth the now-rejected two-step framework as its legal standard, it did not engage in the "means-end scrutiny" or "interest-balancing inquiry" that the *Bruen* Court discarded. *See* 913 F.3d at 161 ("Because the claim fails at the first step . . . , we need not reach the second step."). The *Bruen* Court specified that the two-step framework was "one step too many," but it held that the first step was "broadly consistent with *Heller*" and emphasized that the test it was applying—requiring "courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding"—was the same "test that [the Court] set forth in *Heller*." 597 U.S. at 19, 26.

The *Medina* Court solely examined "tradition and history" to establish that a "felony conviction removes one from the scope of the Second Amendment," and it looked to *Heller* for guidance in doing so. 913 F.3d. at 158, 160. As another court in this district has explained, the *Bruen* Court's "refinement of the historical method applied in *Medina* does not 'clearly dictate a departure' from *Medina* such that this Court could conclude it had been overruled." *United States v. Richardson*, No. 23-CR-200-1, 2024 WL 402948, at *4 (D.D.C. Feb. 2, 2024) (quoting *Bahlul v. United States*, 77 F.4th 918, 927 (D.C. Cir. 2023)).[6]

---

[6] Mr. Kujabi takes issue with the *Medina* Court's historical analysis and its reliance on historical sources that would be insufficient under *Bruen*. ECF No. 23, at 4-5, 25-32. At most, he has identified "'tension' between *Medina* and *Bruen*, which is not enough for this Court to disregard a 'prior factually indistinguishable decision.'" *Richardson*, 2024 WL 402948, at *4 (quoting *Angelo v. District of Columbia*, 648 F. Supp. 3d 116, 129 (D.D.C. 2022)).

Mr. Kujabi also attacks the *Medina* Court's reliance on a "responsible citizen" theory that the Supreme Court recently rejected in *United States v. Rahimi*, 602 U.S. 680 (2024). ECF No. 23, at 7-8. In *Medina*, the D.C. Circuit noted that "felons are not among the law-abiding, responsible citizens entitled to the protections of the Second Amendment." 913 F.3d at 154. Mr. Kujabi argues that, in *Rahimi*, the Supreme Court "reject[ed] the Government's contention that Rahimi could be disarmed simply because he is not 'responsible.'" 602 U.S. at 701; *see* ECF No. 23, at 7-8. However, *Medina*'s holding was based not on the line between "responsible" and "irresponsible" citizens, but instead on the line between those with felony convictions and those without. *See* 913 F.3d at 160. Indeed, the D.C. Circuit "expressly declined to apply the 'virtuous citizen' iteration of that [responsible citizen] principle." *United States v. Turman*, No. 23-CR-171, 2024 WL 6111873, at *3-4 (D.D.C. Dec. 2, 2024). This court thus concludes that it is bound by *Medina*'s holding that Section 922(g)(1) is consistent with the Second Amendment's text and historical understanding.

Rather than undermine *Medina*, the Supreme Court's reasoning in *Rahimi* lends further support to *Medina*'s conclusion. The Supreme Court affirmed that the Nation's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 690; *id.* at 698 ("Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."). That analysis applies with equal force to those previously convicted of a felony. Moreover, the *Rahimi* Court repeated *Heller*'s statement that felon-in-possession laws are "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626, 627, n.26). "These statements were not made casually or

inadvertently." Order at 11 n.4, *United States v. Sargent*, No. 24-CR-447 (D.D.C. May 21, 2025). Thus, *Rahimi* further supports the court's conclusion that Section 922(g)(1) is constitutional.

Finally, Mr. Kujabi's as-applied challenge fares no better. As the argument goes, even if 18 U.S.C. § 922(g)(1) is facially constitutional, the law violates the Second Amendment as-applied to Mr. Kujabi because his prior conviction is "not [for a] categorically dangerous offense[]" and the facts underlying that case "do not support a finding that he is violent or has a history of dangerous behavior with firearms." ECF No. 23, at 23. Put differently, Mr. Kujabi asks the court to draw a distinction between violent predicate felonies and those, like possession with intent to distribute marijuana, which he contends do not necessarily involve dangerous behavior. The United States responds that Mr. Kujabi's as-applied challenge fails because he has not "proffered that [he] possessed the gun[]" found in his car "for the purpose of lawful self-defense." ECF No. 27, at 32.

Mr. Kujabi's as-applied claim cannot be squared with *Medina*. There, Mr. Medina had one decades-old felony conviction for falsifying his income on a mortgage application. 913 F.3d at 154. The Court dispensed with Mr. Medina's as-applied challenge because he had not "show[n] facts about his conviction that distinguishe[d] him from other convicted felons encompassed by the [Section] 922(g)(1) prohibition." *Id.* at 160. To be sure, the Court suggested that Mr. Medina was not "law-abiding," *id.* (internal quotation marks omitted), a line of reasoning that the *Rahimi* Court rejected, 602 U.S. at 701. But as the court has noted, *Medina* did not rest its holding on the virtuous-citizen principle. *See supra* at 7; *see also Turman*, 2024 WL 6111873, at *3-4. Instead, Mr. Medina's as-applied challenge lacked merit because he had not established "that his crime was so minor or regulatory that he [had] not forfeit[ed] his right to bear arms by committing it." *Medina*, 913 F.3d at 160.

The same is true in Mr. Kujabi's case. Aside from his assertion that possession of marijuana with the intent to distribute it does not involve categorically dangerous or violent conduct, he has not shown that the "facts about his conviction . . . distinguish[] him from other convicted felons." *Id.* Mr. Kujabi references the "facts underlying [his] prior marijuana offense," ECF No. 23, at 23, but he has not described what conduct led to his prior arrest and conviction, *see generally* ECF Nos. 23, 31. Without such information, the court cannot conclude that his prior conviction is "so minor or regulatory" to warrant removing him from the class of felons who are prohibited from possessing firearms. *Medina*, 913 F.3d at 160; *see Richardson*, 2024 WL 402948, at *2-3 (rejecting an as-applied challenge brought by a defendant whose previous convictions were for purportedly non-violent possession of a firearm because he "d[id] not explain" why his prior convictions were distinguishable from those of other convicted felons). Accordingly, the court will deny Mr. Kujabi's as-applied challenge.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mr. Kujabi's Motion to Dismiss, ECF No. 23, is **DENIED**. It is further **ORDERED** that Defendant Darkwah's Motion to Join, Adopt, and Conform Pre-Trial Motions, ECF No. 24, is **DENIED** as moot.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   January 21, 2026